**LA CHEMISE LACOSTE, a French corporation, Plaintiff,**

v.

**The ALLIGATOR COMPANY, INC., Defendant and Third-Party Plaintiff,**

v.

**JEAN PATOU, INC., a New York corporation, Third-Party Defendant.**

**Civ. A. No. 3876.**

United States District Court,
D. Delaware.

June 4, 1973.

See also 59 F.R.D. 332.

Thomas S. Lodge of Connolly, Bove & Lodge, Wilmington, Del. and W. Brown Morton, Jr. and Donal B. Tobin of Morton, Bernard, Brown, Roberts & Sutherland, Washington, D. C., of counsel, for plaintiff and third-party defendant.

Lewis S. Black, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Irving Constant and Brian L. Bilzin of Rubin, Wachtel, Baum & Levin, New York City, and Arthur H. Seidel and Allen L. Greenberg of Seidel, Gonda & Goldhammer, Philadelphia, Pa., of counsel, for defendant and third-party plaintiff.

## OPINION

LATCHUM, District Judge.

In this trademark litigation [1] brought by La Chemise Lacoste ("LCL") against The Alligator Company, Inc. ("Alligator"), the Court is required to decide eight separate motions which were filed shortly before the trial on the merits was scheduled to commence. These motions will be considered *seriatim*.

1. *Alligator's Motion For A Protective Order With Respect to LCL's Notice To Take The Deposition Of Louis Kunin, Esquire and LCL's Request To Alligator To Produce Documents.*

LCL noticed Alligator on March 29, 1973 that it would take the deposition upon oral examination on April 5, 1973 of Louis Kunin, Esquire, a member of a New York law firm which had been Alligator's counsel from 1965 to 1970. The notice also listed three broad categories of documents which Mr. Kunin would be required to produce at his deposition under a subpoena *duces tecum* to be issued pursuant to Rule 45(d)(1), F.R.Civ.P.[2] LCL also served upon Alligator a request to produce the same three categories of documents sought from Mr. Kunin.[3] Alligator then moved for a protective or-

---

1. Prior proceedings in this case may be found in 313 F.Supp. 915 (D.Del.1970) and 53 F.R.D. 596 (D.Del.1971).

2. Docket Item 246.

3. Docket Item 248.

der vacating the Kunin deposition [4] and objected to LCL's request to it for the production of documents.[5]

The documents sought from Mr. Kunin [6] are:

"1. All documents, files, memoranda, correspondence, law memoranda, opinions, or communications of any kind or description of the Alligator Company, Inc., (Alligator) or B.V.D. Company, Inc. (B.V.D.) within his law firm's custody or control which in any way refer to or relate to or comment upon La Chemise Lacoste (Lacoste), David Crystal, Inc., (Crystal), its predecessors, successors, or affiliated companies, including, but not limited to, Izod, Ltd. (Izod) and General Mills, Inc. (Mills), or the use as a trademark of a pictorial representation of any lizard-like reptile. This list is intended to include all communications between Mr. Kunin and/or his law firm and B.V.D. and Alligator and all internal and external law memoranda and legal opinions rendered by Mr. Kunin or his law firm concerning the trademark rights of Alligator and/or B.V.D. vis-a-vis Lacoste, Crystal, Mills or Izod.

2. All files in Mr. Kunin's, or his law firm's, custody or control relating to meetings held in New York in December, 1967 between representatives of Alligator, B.V.D. and Lacoste.

3. All of Alligator's trademark files throughout the world relating to the words 'alligator,' 'crocodile' or any other lizard-like reptile or any pictorial representation of an 'alligator,' 'crocodile' or any other lizard-like reptile."

Alligator's objection to the deposition and the production of documents set forth in Categories 1 and 2 is based on the contention that the information sought is protected from disclosure by the attorney-client privilege.[7] Alligator objects to producing its files relating to its trademarks "throughout the world, outside the United States" set forth in Category 3 as entirely irrelevant to the issues of the pending litigation and as unlikely to lead to admissible evidence.[8] Alligator also objects to the deposition and production requests because they are in violation of the Court's order of October 19, 1972 requiring all discovery to be completed by April 2, 1973.[9]

Both parties in briefing and arguing the present motion have agreed that the primary purpose of Mr. Kunin's deposition and the production of documents is to obtain information which Alligator contends is covered by the attorney-client privilege but which LCL regards as information to which the privilege has been waived. LCL agrees that it seeks the documents primarily to enable it to cross-examine Horst von Maltitz ("von Maltitz"). Mr. von Maltitz is a New York lawyer who ceased the active practice of law in 1967. Formerly, he was a member of the law firm of von Maltitz, Derenberg, Kunin & Janssen, which firm had acted as trademark counsel to Alligator's predecessor from 1967 to December 3, 1970.[10] On March 28, 1973 Alligator took Mr. von Maltitz's deposition in this case to inquire into a conversation that he had had in December 1967 with Robert Abdesselam, LCL's French attorney. Mr. Abdesselam's deposition had been taken earlier on January 11, 1973 and at that deposition Mr.

4. Docket Item 250.

5. Docket Item 283.

6. Docket Item 246; the request for the production of documents from Alligator is essentially the same except that Category 1 refers to Alligator's attorneys generally instead of specifically to Mr. Kunin. See Docket Item 248.

7. Docket Items 250, 259 and 286.

8. Docket Item 250, p. 4; Docket Item 283. Since this information is also sought by answers to interrogatories which LCL seeks to compel, this issue will be discussed later in this opinion.

9. Docket Item 205.

10. Ex. pp. 2–6 to Docket Item 259.

Abdesselam had testified that he had met with Mr. von Maltitz in December 1967 who told him that LCL "had common law rights in the crocodile emblem." [11] Mr. von Maltitz at his deposition admitted that he had met with Mr. Abdesselam [12] but categorically denied that he ever told Mr. Abdesselam in words or substance that LCL had any rights in the crocodile emblem on apparel in the United States except for rights granted to David Crystal, Inc.[13] by Alligator's license agreement.[14] Mr. von Maltitz when asked: "What is the basis of your recollection that you did not tell Mr. Abdesselam that La Chemise Lacoste had any rights to the crocodile emblem on apparel in the United States?", answered:

"A. Well, I have lately reviewed our file in the matter: I find no indication in the file whatsoever that I made such a statement.

"But above all, the statement, the contention that La Chemise Lacoste owned common law rights in this mark for apparel would have been totally inconsistent with the entire position which we took throughout our dealings with Lacoste and it would have been totally inconsistent also with the license agreement itself.

"Q. The license agreement you are referring to is a license agreement between the Alligator Company and David Crystal, Inc.; is that correct?

A. That's correct, yes." [15]

Upon cross-examination by LCL's counsel as to what records Mr. von Maltitz consulted in preparation for the deposition, he testified:

"A. Well, most of the files relating to the Alligator Company which my firm originally had were transferred, I think, several years ago after my time to a Mr. Seidel in Philadelphia.

"A few files remain and among these few files was a file or is a file concerning these meetings with Mr. Abdesselam and correspondence preparatory to the meeting." [16]

He then stated that the documents that he reviewed in preparation of his deposition were in the custody of his former law partner, Mr. Kunin.

■■■■ Based on this testimony and relying upon Bailey v. Meister Brau, Inc., 57 F.R.D. 11 (N.D.Ill.1972), LCL argues that it has the absolute right to inspect all documents, whether privileged or not, that Mr. von Maltitz consulted prior to his deposition. But this was not the holding of *Bailey*. *Bailey* stands for the proposition that counsel is entitled to inspect even a privileged document which is used by a witness to refresh his recollection when testifying *at* his deposition; it does not hold that privileged documents may be inspected which were reviewed prior thereto in preparation of testifying. Thus, *Bailey* follows the usual federal rule that there is no absolute right to the production and inspection of documents reviewed by a witness prior to the time he testifies on deposition or at trial; such an inspection is limited to documents which are used by a witness to refresh his recollection while testifying. Goldman v. United States, 316 U.S. 129, 132, 62 S. Ct. 993, 86 L.Ed. 1322 (1942); McGill v. United States, 106 U.S.App.D.C. 136, 270 F.2d 329, 330–331 (1959), cert. den. 362 U.S. 905, 80 S.Ct. 615, 4 L.Ed.2d 555 (1960); Lennon v. United States, 20 F. 2d 490, 493–494 (C.A. 8, 1927); Richard Nelson Co. v. United States, 337 F.Supp. 1319, 1320–1321 (U.S.Cus.Ct., 2d Div., 1972). From this the Court concludes

11. Ex. pp. 9–11 to Docket Item 259.

12. Ex. pp. 8–9 to Docket Item 259.

13. David Crystal, Inc. was LCL's distributor in the United States for marketing apparel bearing the crocodile emblem.

14. Ex. pp. 12–14 to Docket Item 259.

15. Ex. p. 13 to Docket Item 259.

16. Ex. pp. 14–15 to Docket Item 259.

LCL had no absolute right to inspect the documents, whether or not privileged, which Mr. von Maltitz reviewed in preparation of his deposition prior to testifying. Here Alligator claims the documents reviewed by Mr. von Maltitz were privileged by the former attorney-client relationship. On the other hand LCL contends that, if privileged, the privilege was waived by his testimony quoted above. The Court is unable to conclude, that Mr. von Maltitz's review of the records in order to verify that he had not informed Mr. Abdesselam in December 1967 that LCL had any common law rights in the United States of the crocodile emblem except those granted to David Crystal, Inc. by Alligator's license agreement, was sufficient to waive any privilege attached to the documents reviewed privately before he testified. There was no clear and intentional waiver of any privilege under the circumstances. International Business Machine Corp. v. Sperry Rand Corp., 44 F. R.D. 10, 13 (D.Del.1968).

Nor does the Court find that Mr. von Maltitz's other testimony referred to by LCL was sufficient to waive any privilege. Mr. von Maltitz testified:[17]

"Q. Did you in words or in substance convey to Mr. Abdesselam Alligator's position?

A. No, I think the matter never came up, because both he and I proceeded on the assumption that the Alligator Company owned all the rights, put it this way, the entire right, title and interest to the trademark so there was no question that we could ever have discussed Lacoste owning common law rights.

Also the mark had been registered in the name of the Alligator Company for apparel and not in the name of Lacoste.

The ownership of the common law rights or the retention of common law rights by Lacoste would have been to-tally inconsistent with those trademark registrations."

The first paragraph of Mr. von Maltitz's testimony related to no privileged communication; it simply states the fact that he and Mr. Abdesselam proceeded in their dealings on the assumption Alligator owned all the rights to the crocodile emblem. There can be no waiver of the privilege by the testimony of an attorney to an "assumption" upon which two attorneys, representing different clients, proceeded in their discussions. By the same token the second and third paragraphs of von Maltitz's testimony that Alligator had certain trademark registrations and any retention of common law rights by LCL would have been inconsistent with those trademark registrations was not sufficient to waive the privilege. The trademark registrations were public documents and testimony concerning them does not constitute disclosure of confidential communications of the attorney-client privilege. There can be no waiver of the privilege where there has been no disclosure of confidential information.

On the basis of the above discussion, the Court concludes that, since LCL concedes that the primary purpose for seeking the production and inspection from Mr. Kunin and from Alligator of the Categories 1 and 2 documents, whether privileged or not, is to enable it to cross-examine Mr. von Maltitz further, LCL has no absolute right to inspect because Mr. von Maltitz did not refresh his recollection from them during his deposition. Thus, production of these documents whether or not privileged will not be ordered for this purpose. Further, if the Categories 1 and 2 documents sought are covered by the attorney-client privilege, as the parties have argued, the Court finds there has been no waiver of that privilege by Mr. von Maltitz's testimony. But these rulings do not end the matter because the

17. Ex. pp. 13–14 to Docket Item 259.

Court has not yet passed upon the question whether specific Categories 1 and 2 documents in the files are or are not privileged. Thus, if the Court should find that specific documents are not privileged, then LCL may be entitled to their production as relevant information which may lead to the discovery of admissible evidence. In order for the Court to rule on specific documents in Categories 1 and 2, it will be ordered that Mr. Kunin's deposition be held, that he be required to identify the documents in his possession and that Alligator be required to indicate what documents are claimed to be privileged and that these documents be submitted to the Court for *in camera* inspection.[18] This will also apply to Categories 1 and 2 documents in Alligator's possession. If after the *in camera* inspection, the Court finds that any of the documents in Categories 1 and 2 are not privileged, and contain information which may lead to the discovery of admissible evidence, they will be ordered produced under Rule 34, F.R. Civ.P.

■ Alligator also objects to the Kunin deposition and production sought because it comes after the court-ordered cut-off date for discovery. Under the circumstances, the Court does not find this a valid reason for denying the discovery. The cut-off date was entered when trial was originally scheduled. It is now apparent in view of the several pending motions that the trial can not be held as originally scheduled and a new discovery and trial schedule will have to be settled.

2. *LCL's Rule 37 Motion To Compel Answers To Interrogatories And The Production Of Related Documents.*

LCL has moved to compel answers to certain interrogatories propounded to Alligator and to compel the production of related documents which LCL claims have not been completely answered or produced or to which Alligator has objected.[19]

(a) *Interrogatories 8 and 17.*

Interrogatories 8 and 17 seek the consideration given and received by the B. V.D. Company ("B.V.D.") and given and received by General Mills, Inc. ("Mills") when each respectively acquired Alligator.[20] Alligator objects to stating the consideration that was given by either B.V.D. and Mills on the ground the information "is irrelevant to the issues raised by the pleadings and is not likely to lead to relevant information."[21] On the other hand, LCL argues [22] that the purchase prices paid are relevant: (1) to the issues of damages which Alligator seeks on its counterclaim from LCL for trademark infringement, unfair competition and breach of contract, (2) to establish the value of Alligator's reputation as a quality manufacturer and to provide evidence of the strength of Alligator's trademarks, (3) to provide information whether Alligator's trademarks were transferred in gross and possibly provide evidence of their continuing validity, and (4) to determine the motive that prompted Mills to acquire Alligator.

■ Under Rule 26(b)(1), F.R. Civ.P., a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter . . . .". The boundaries defining information relevant to the subject matter involved in an action are necessarily vague, making it practically impossible to formulate a general rule by which they can be drawn. Certainly, the requirement of relevancy must be construed liberally and with common sense rather than measured by the precise issues framed by the pleadings or limited

---

18. If the documents in Categories 1 and 2 claimed to be privileged are voluminous, the Court may refer them to a special master for initial determination.

19. Docket Items 186, 188 and 254.

20. Docket Item 255.

21. Docket Item 263.

22. Docket Items 257 and 280.

by other concepts of narrow legalisms. Thus, discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action. Dart Industries, Inc. v. Liquid Nitrogen Processing Corp., 50 F.R.D. 286, 292 (D.Del.1970). This is so because the spirit of Rule 26(b) calls for all relevant information, however remote, to be brought out for inspection not only by the opposing party but also for the benefit of the Court which in due course can either eliminate the information or give it just such weight as the information is entitled when determining the ultimate issues at trial. See Hercules Powder Co. v. Rohm & Haas Co., 3 F.R.D. 302, 304 (D.Del.1943).

■■ Applying these broad guidelines to the information sought by Interrogatories 8 and 17, the Court is now unable to conclude that the information will not have some possible bearing upon the issue of Alligator's damages, the strength of Alligator's trademarks at a particular time or the question of continuing validity of the trademarks.[23] For these reasons, Alligator will be ordered to answer Interrogatories 8 and 17.

(b) *Interrogatories 9, 10, 89, 90 and Request No. 1.*

LCL's Interrogatories 9, 10, 89, 90 and Request No. 1 are directed to specifics of the sale of Alligator's assets to B. V.D. on or about June 11, 1965.[24] Alligator has answered these interrogatories generally without giving specific details because it avers that it does not have the information available to it, that it does not have any documents relating to the subject within its possession, custody or control other than those already produced, and that, if such information is known or if related documents do exist, they may possibly be in the possession of B.V.D., a company wholly independent and unrelated to Alligator.

■■■ A party, of course, must provide by way of answers to interrogatories the relevant facts readily available to it but it should not be required to enter upon extensive independent research in order to acquire such information. United States v. Columbia Steel Co., 7 F.R.D. 183, 184 (D.Del.1947). Here, if the data is possessed by B.V.D., it appears equally available to LCL as to Alligator. On the showing made here that the documents sought for production are not within Alligator's custody, control or possession, Alligator cannot be compelled to produce them. United States v. Dempster Bros., Inc., 31 F.R.D. 207 (E. D.Tenn.1962).

Thus, LCL's motion to compel further answers to Interrogatories 9, 10, 89, 90 and Request No. 1 for the production of related documents will be denied.

(c) *Interrogatories 11, 23, 24 and Requests Nos. 6 and 7.*

These interrogatories and requests of LCL seek the disclosure of Alligator's trademark applications and registrations outside the United States. Alligator resists this discovery on the ground that "its foreign trademark position is irrelevant to the issues raised by the pleadings" in the present case. LCL claims, on the other hand, that pursuant to a letter agreement exchanged between LCL and Alligator dated July 14, 1959, the parties agreed to create a relationship between themselves on a world-wide basis "parallel to that existing in the United States between itself [Alligator] and Crystal" [LCL's exclusive licensee in the United States.] LCL says such a cooperative relationship was contemplated at least in Australia, Germany, Mexico and Brazil. LCL further argues that

---

23. The Court has heretofore ruled, in an unreported opinion, that the motives of B.V.D. and Mills in acquiring Alligator are irrelevant to the subject matter.

24. Docket Items 186, 188 and 254.

information and documents relating to and commenting upon the cooperation that took place in foreign countries with respect to their trademark positions as reflected by Alligator's foreign trademark files might throw light on the meaning of the parallel relationship existing in the United States between Alligator and LCL which is an issue with which this Court must deal in the present case.

 To this extent the Court finds that the information and documents sought by LCL's Interrogatories 11, 23, 24 and Requests Nos. 6 and 7 are relevant and should be answered or produced. However, the answers and production shall be limited to those trademark files which pertain to or throw light upon the cooperative relationship which existed between LCL and Alligator in any foreign country, paralleling that in the United States.

(d) *Interrogatory 12.*

LCL's Interrogatory 12 asks: "When did Mills or any of its subsidiaries first discuss with Alligator or B.V.D. Company, acquiring any interest in Alligator?" Alligator objects to this question as irrelevant and further that the information is sought for use in litigation that LCL has instituted against Mills and its subsidiaries in the Republic of France in which Mills is charged with a conspiracy in acquiring Alligator. Apparently both parties regard Interrogatory 12 as a prelude to more extensive discovery into Mills' motivation for acquiring Alligator because LCL states in its brief: "It is Lacoste's contention that the unlawful intent of Mills in purchasing Alligator goes to the heart of Alligator's current interpretation of the settlement agreement of September 22, 1958, and, therefore, Lacoste has a right to discover the full extent of the negotiations between Mills and Alligator for that purchase."

The Court in a prior unreported opinion of March 16, 1973 held that the motives of Mills in acquiring Alligator are simply irrelevant to the present litigation and not likely to lead to relevant evidence. The Court adheres to that decision and Interrogatory 12 need not be answered.

(e) *Request To Produce No. 11.*

 Request to Produce No. 11 deals with all documents regarding legal proceedings involving Alligator's lizardlike reptile trademarks throughout the world. From the briefing and oral argument, it appears that the information sought now relates to suits in the United States. Alligator avers that it has produced all documents in its possession, custody or control relating to such litigation. This being averred, Alligator cannot be required to produce the impossible and no compulsion order will be entered for the reasons stated in 2(b) above.

(f) *Interrogatories 46, 47, 64, 65, 68, 70, 80 and 81.*

These interrogatories range from requesting the valuation placed on reputation and good will of Alligator's business in connection with its trademarks to detailed information regarding the amount and type of garments sold under Alligator's various trademarks and the extent of Alligator's advertising and publicity relating to articles of apparel bearing a picture of a lizard-like reptile. To all of these interrogatories Alligator has responded by giving the best information it has available and has produced all related documents in its custody, possession and control. Alligator maintains it has made every effort to locate the documents and items of information sought by these interrogatories and any missing material is not available to it. In the face of these representations, the Court will not compel further discovery from Alligator with respect to these interrogatories.

3. *Alligator's and Crystal's Separate Motions For A Protective Order Regarding Question No. 4 Propounded To Crystal By LCL.*

On April 3, 1973 LCL served upon David Crystal, Inc. ("Crystal") a list of documents to be produced by subpoena, pursuant to Rule 45(d)(1), F.R.Civ.P., which counsel have agreed would be treated as a request to produce under Rule 34.[25]

Both Crystal and Alligator object to the documents required to be produced by Paragraph 4 of LCL's motion and move for a protective order which would strike Paragraph 4 on the ground the documents sought are burdensome, irrelevant and privileged.[26] Paragraph 4 reads:

> "4. In so far as it is not duplicative of production already made by Alligator, or Lacoste, please produce and permit inspection and copying of all documents and correspondence passing between Crystal or any of its parent or subsidiary corporations or their agents, employees, representatives, or attorneys; and on the one hand, LCL, its agents, employees, representatives, or attorneys; and on another hand Alligator, its agents, employees, representatives, or attorneys; and on another hand, Est. Gillier, its agents, representatives, or attorneys; or any other firm, person or corporation relating to the exploitation of apparel or any other thing in connection with the word and/or, picture of any lizard-like reptile."

■ The Court agrees that at this late stage of the proceedings the request is far too broad. This case was scheduled for trial in October 1972 to begin on June 11, 1973. This information was not sought from Crystal until April 3, 1973. It covers an enormous mass of documents which would take an inordinate amount of time to inspect.[27] If the request had come earlier, the Court might have taken a more tolerant attitude but it appears that the scope of the discovery now sought is "discovery purely for discovery sake." Indeed, LCL concedes that the request may be too broad as many commercial documents, such as shipping invoices, order forms, purchase orders and the like, are not desired. Sifting the request to its essentials, it appears that what LCL really wants and should see, if such documents exist, are: (1) any litigation files in which Alligator and Crystal were joint parties, (2) files which show advertising of emblem bearing goods which Crystal and its subsidiary, Izod, undertook, and (3) Crystal and Izod files or documents which directly relate to showing the usage made by them of Alligator's various trademarks. The documents in these categories, as limited, will be ordered produced, unless specific items are claimed to be privileged, in which event, the document shall be described and submitted to the Court for *in camera* inspection in the manner outlined under Section 1 of this opinion.

4. *LCL's Motion To Compel A Further Answer To Interrogatory 98 By Alligator.*

LCL's Interrogatory 98 and Alligator's answer appears as follows: [28]

> "Was there any cooperation or communication about attempts to retain any trademark protection for reptilian trademarks, with respect to any goods, either by LCL or Alligator
>
> a) in West Germany
>
> b) in Australia
>
> c) relating to reptilian trademark position of Salamander Aktiengesellschraft Company of West Germany
>
> d) in the Republic of Ireland on or about September 4, 1963
>
> e) in Mexico.

25. Docket Item 251.

26. Docket Items 268 and 270.

27. Docket Items 269 and 271.

28. Docket Item 289.

*Answer.*

"To the extent that any documents will indicate cooperation or communication between LCL and Alligator, they have already been produced. Alligator has no information concerning oral cooperation or communication."

■ LCL takes issue with that part of the answer in which Alligator fails to disclose any oral communication, for example, by Alligator's former attorneys, David Wield, III, Hubert Moore, Lewis Kunin and Horst von Maltitz. Without more specific guidance from LCL, Alligator will not be required to make a more responsive answer than that already given.

5. *Alligator's Motion To Vacate Notices Of Depositions Of General Mills, Inc. And B.V.D. Company.*

On April 16, 1973, LCL served notices of depositions upon Mills and B.V.D., non-parties to this suit.[29] The notices also seek the production of a large number of documents. Alligator has moved to vacate the notices for a number of reasons.[30] To a large extent LCL's discovery here appears to be duplicative. But be that as it may, the depositions will not be vacated, but for the purposes of the present litigation, the depositions and the documents to be produced by Mills and B.V.D. shall be confined and limited to matters involving sales, advertising and promotion of emblem bearing goods. The Court's earlier opinion denying LCL the right to inquire into the motives of Mills and B.V.D. for acquiring Alligator stands.

6. *LCL's Motion For Reconsideration Of The Order Dropping Mills, Crystal And Izod As Parties.*

By order dated December 8, 1971 ("Order") entered for the reasons set forth in its opinion of November 16, 1971, 53 F.R.D. 596, the Court directed:

"1. Under Rule 21, F.R.Civ.P., General Mills, Inc., David Crystal, Inc. and Izod, Ltd. are dropped as party defendants because of misjoinder under Rule 19(a) of the Federal Rules of Civil Procedure. La Chemise Lacoste's counterclaim in reply against General Mills, Inc., David Crystal, Inc. and Izod, Ltd. is dismissed under Rule 12(b)(6), F.R.Civ.P., for failure to state a claim against them upon which relief can be granted. This action is also dismissed as to Izod, Ltd. under Rule 12(b)(5), F.R.Civ..P, for lack of jurisdiction because of insufficiency of service of process."

LCL moved on April 24, 1973 for a reconsideration of that Order and has advanced in support thereafter a number of reasons.[31] After fully considering the matter, the Court is convinced nothing has transpired since the Order of December 8, 1971 to require adding new parties. The dispute in this litigation remain limited to disagreements between LCL and Alligator; the rights of Mills, Crystal and Izod are not involved in these disputes; neither LCL or Alligator asserts any claim, right or cause of action against Mills, Crystal or Izod; and complete relief can be accorded between Alligator and LCL without the presence of Mills, Crystal and Izod. Furthermore, no greater showing has been made, than existed before, that Mills is the *alter ego* of Alligator, Crystal or Izod nor has it been shown that Izod is subject to this Court's jurisdiction. The Court will deny LCL's motion for reconsideration.

7. *LCL's Motion To Consolidate C.A. No. 4623 With This Action.*

On April 5, 1973 LCL filed C.A. No. 4623 charging Alligator with infringement of LCL's rights secured under U.S. Trademark Registration No. 688,685.[32] At the same time, LCL moved to consoli-

---

29. Docket Item 265.

30. Docket Item 284.

31. Docket Items 290, 299, 302 and 301.

32. Docket Item 2 (C.A. 4623).

date the new action with the present case.

Rule 42(a), F.R.Civ.P., provides:

"Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; it may make such order concerning proceedings therein as may tend to avoid unnecessary costs and delay."

▓▓▓▓ Whether consolidation should be ordered is a matter of sound .judicial discretion. Under the present circumstances the Court concludes that consolidation should not be granted for two reasons.

First, the Court is not satisfied that the cases involve such common questions of law and fact as to justify consolidation. The issues involved in C.A. No. 3876 may be summarized as follows:

1. Does LCL's use of the crocodile emblem on toiletries constitute (a) an infringement of Alligator's trademarks, (b) unfair competition with Alligator, and (c) the willful derogation of LCL's contractual understandings with Alligator? (Ans. Pars. 24, 30, 33).

2. Does Alligator's objection to LCL's sales of toiletries and soaps in the United States under the crocodile emblem constitute a breach of the contractual relationship between Alligator and LCL? (Amended and Supplemental Reply, Par. 17).

3. Is Alligator's attempt to register the crocodile emblem and the so-called "mirror-image" of the crocodile emblem for apparel a breach of the contractual relationship between Alligator and LCL? (Amended and Supplemental Reply, Par. 11).

4. Is Alligator's objection to LCL's attempts to register the crocodile emblem as a trademark for toiletries and soaps a breach of the contractual relationship between Alligator and LCL?

(Amended and Supplemental Reply, Pars. 18, 19, 20).

5. Is Alligator's threat to oppose LCL's application to register the crocodile emblem as a trademark for bags a breach of the same contractual relationship? (Amended and Supplemental Reply, Par. 25).

6. Is Alligator's licensing of others, specifically Knothe Brothers Company, Inc. ("Knothe"), to use the crocodile emblem and its mirror-image a willful derogation of its contractual obligations to LCL? (Amended and Supplemental Reply, Par. 12).

7. Could Alligator and Izod amend the License Agreement dated September 22, 1958 without the consent of LCL? (Amended and Supplemental Reply, Par. 13).

Alligator's alleged trademark rights are involved in that case and the goods involved other than apparel are toiletries and bags.

On the other hand, C.A. No. 4623 involved LCL's alleged trademark rights in the field of sporting equipment and raises the following issues:

1. Has Alligator infringed LCL's United States Trademark Registration No. 688,685? (Complaint, Par. 7).

2. Did LCL perpetrate a fraud on the United States Patent Office in regard to the filing of a Combined Affidavit under Sections 8 & 15 executed October 19, 1965 and filed on October 21, 1965? (Answer, Par. 12).

3. Has LCL abandoned Registration No. 688,685 due to non-use for more than two consecutive years? (Counterclaim, Par. 29).

There is no question that the recently filed suit raises entirely new and different issues of law. Yet, LCL argues that Alligator has admitted, in proceedings which it brought in the U. S. Patent Office to cancel LCL's Registration No. 688,685, that a determination of an issue in C.A. No. 3876 may determine or affect a factual and statutory issue in the

Patent Office, when Alligator jointly applied with LCL for a stay of the cancellation proceedings. Thus, LCL now contends that Alligator has conceded that common issues exist between the cases.

The Court is unable to agree with this conclusion. In Pars. 15 and 16 of LCL's amended and supplemental first counterclaim in reply filed in C.A. No. 3876, LCL alleged that a contract exists between it and Alligator which precludes Alligator from objecting to LCL's use and registration of the crocodile emblem for sporting goods unless actual confusion with Alligator's trademark position exists. Alligator denies such a contract. Thus, if the Court should determine in C.A. No. 3876 that such a contract does exist, then Alligator might be precluded as a matter of contract, from maintaining its petition in the Patent Office to cancel LCL's registration for sporting goods. In that case the Patent Office would then have to decide whether such a contract would prohibit Alligator from objecting to LCL's allegedly abandoned registration and whether there is actual confusion with Alligator's trademark position. But if no such contract is found to exist by this Court, these later issues would never be reached.

On the other hand, if the Court should decide that a contract as LCL alleges does exist, C.A. No. 4623 would not be affected because it is an action by LCL against Alligator for trademark infringement *only* in which Alligator alleges abandonment and fraud in the procurement as a basis for its counterclaim. It is not a suit alleging breach of contract, even if this Court in C.A. No. 3876 found one to exist, and Alligator could defend LCL's trademark infringement claims in C.A. No. 4623 by establishing on *trademark grounds* that LCL's registration was invalid. These are separate issues entirely separate from those in C.A. No. 3876. The later case may only affect Alligator's ability

to succeed on the cancellation proceedings in the Patent Office. Consequently, the Court does not view these two cases to be sufficiently connected to order consolidation at this late date.

 Secondly and more importantly, the cases should not be consolidated as a matter of sound judicial administration. C.A. No. 3876 has been pending since April 3, 1970 and is close to trial. The new action has only been recently instituted; undoubtedly much discovery will be needed to ready it for trial. The disposition of the earlier case should not be delayed by the later filed litigation.

The motion to consolidate will be denied.

8. *LCL's Motion For Extension Of Time.*

LCL also moved on April 3, 1973 for an indefinite time to complete discovery and to remove this case from the trial calendar.[33] As previously indicated by an order entered on October 19, 1972, this Court established a completion date for discovery by April 1, 1973, set a Pre-trial conference for May 21, 1973 and directed trial to commence on June 11, 1973. After argument on the above motions on April 26, 1973, the parties completed their briefing on May 14, 1973. Faced with this intense motion activity the Court, in order to have time to rule on the motions, was forced to postpone the Pre-trial conference and trial date. LCL nevertheless maintains that it needs time for further discovery not only as a result of the motions decided here but time and an opportunity to search elsewhere for litigation records and advertising material which Alligator has been unable to produce. Alligator has objected strenuously to all the above motions and particularly to the motion for an indefinite postponement of the trial. Alligator contends that LCL's purpose of delay is not for any valid discovery reason but in order to gain a advantage in LCL's litigation against

33. Docket Item 256.

Mills, Crystal and Izod pending in Paris, France. While the Court will not attribute the present motions to such a strategy on LCL's part, yet the case has not progressed with that deliberate speed with which litigation should move. Seven months' notice appeared more than sufficient to bring the matter to trial; it now appears it was not. However, the Court after a further conference with counsel will establish a new completion date for the discovery ordered herein, a new Pre-trial conference and trial date. The case will not be indefinitely postponed. The parties and counsel are advised to be prepared to bring this litigation to trial within a reasonable period of time.

Submit an order in accordance with this opinion.