GEORGE ROSENFELD AND ANNE ROSENFELD, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18739–81.     Filed January 17, 1984.

*Elliot I. Miller*, for the petitioners.
*Harvey S. Sander*, for the respondent.

## OPINION

DAWSON, *Chief Judge*: This case was assigned pursuant to section 7456(c), I.R.C. 1954, as amended, and Delegation Order No. 8 of this Court, 81 T.C. XXV (1983), to Special Trial Judge Francis J. Cantrel for the purpose of considering and ruling on petitioners' "Motion for Leave to Reargue and for Reconsideration of the Court's June 30, 1983 Order" filed herein. After a review of the record, we agree with and adopt his opinion which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge*: This case is before the Court on petitioners' "Motion for Leave to Reargue and for Reconsideration of the Court's June 30, 1983 Order" filed on July 19, 1983, pursuant to Rule 161, Tax Court Rules of Practice and Procedure.[1] The Court also has before it for its consideration "Respondent's Reply to Petitioners' Motion for Leave to Reargue and for Reconsideration of the Court's June 30, 1983 Order" filed on September 6, 1983.

Respondent, in his notice of deficiency issued to petitioners on April 15, 1981, determined a deficiency in petitioners' Federal income tax for the taxable calendar year 1977 in the amount of $21,522. This deficiency is based on respondent's disallowance of the following deductions for business expenses

---

[1]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

reported on petitioners' Schedule C which was included with their Federal income tax return for 1977:

| | |
|---|---:|
| 1. Advanced royalties | $45,175 |
| 2. Adviser's fees | 1,875 |
| 3. Management fees | 1,457 |
| 4. Accounting fees | 18 |
| 5. Miscellaneous expenses | 1 |
| 6. Interest | 102 |
| | 48,628 |

All of the adjustments determined by respondent relate to the participation of George Rosenfeld (hereinafter called petitioner) in the Landmark Coal Program (LCP).[2] LCP is a partnership formed under the laws of the State of Kentucky for the purpose of developing and commercially exploiting coal-bearing deposits in Greenup County, Ky.[3] All of the co-owners of LCP elected under section 761(a)[4] to be excluded from the application of subchapter K (relating to partners and partnerships) of the Internal Revenue Code of 1954, as amended.

The co-owners of LCP subleased the rights to develop and commercially exploit the coal-bearing deposits on property located in Greenup County, Ky., from Kentucky Eastern Coal Co., Inc. (KECC).[5] The initial term of the lease was 12.9 years. Prior to entering into the sublease agreement, the co-owners received a written report from E. D. Conaway & Associates, a mining engineering company, stating the amount of proven resources of minable and merchantable coal on the property. Pursuant to the terms of the sublease, the co-owners were required to mine the coal on the property diligently and to commence mining promptly. In consideration of the sublease, the co-owners were to pay to KECC a royalty of $4 per ton of

---

[2]Petitioners' allegations, as set forth in their amended petition filed on August 17, 1981, are deemed admitted for purposes of this opinion only.

[3]Petitioners have not stated whether LCP is a general or a limited partnership under Kentucky law. However, because of the extensive activities of the partners or co-owners (hereinafter referred to as co-owners) as detailed in the amended petition, we do not believe that any of the co-owners are limited partners, and, consequently, the partnership would not be a limited partnership pursuant to the requirements of Ky. Rev. Stat. sec. 362.410 (1972).

[4]All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise specified.

[5]The record before us does not indicate who actually executed the sublease, each of the individual co-owners in their capacity as such or a representative of LCP. This ambiguity appears throughout the allegations in the amended petition. For purposes of this opinion, we have assumed that the co-owners acted in their individual capacities where such ambiguities appear.

coal mined and sold by LCP, subject to a minimum royalty of $300,000 per annum in the aggregate for all co-owners. If any co-owner failed to make his royalty payment due under the sublease, KECC could foreclose on his working interest in the property.

The full amount of the minimum royalty was to be prepaid for approximately the full initial term of the sublease. This represented an aggregate prepayment amount of $745,500 paid in cash and $3,139,500 paid in the form of a nonrecourse, promissory note bearing a 6-percent simple interest rate. Petitioner's share of the cash and note prepayment was $8,668.69 and $36,505.81, respectively.[6] Payments on the promissory notes were to be made annually with prepayments of $3 per ton of coal mined and sold in the year above 100,000 tons. Each note was secured by the co-owner's working interest in the property. If any co-owner failed to make payments as due on his note, his working interest in the property could be foreclosed by KECC on 3 months' notice.

In order to fulfill their obligations under the sublease, each co-owner entered into a mining services contract with Ford Energy Corp. (FEC). Under the terms of these contracts, FEC was to mine a sufficient amount of coal from the property to ensure timely payment of the promissory notes. To the extent such payments were not made, FEC agreed to pay each co-owner an amount as liquidated damages. There is no indication of what consideration was to be paid to FEC for performance under these agreements. Subsequently, petitioner and FEC executed an addendum to their original agreement under which FEC was to sell petitioner's allocable share of coal on the "spot market."

In addition to the sublease, the nonrecourse, promissory notes, and the mining services contracts, the co-owners entered into a joint operating agreement among themselves for management and development of the property subject to the sublease. Under the terms of this agreement, each co-owner reserved the right to take his proportionate share of coal

---

[6]Although not entirely clear from the record before us, it appears that each co-owner individually was to make payment which in the aggregate for all co-owners would equal the total payments due under the sublease, and that each co-owner individually was to execute a nonrecourse, promissory note in the amount of his allocable share of the payment not made in cash.

actually mined, after paying attendant expenses, for sale or use. The joint operating agreement also provided, inter alia, that each co-owner was liable only for his own obligations under the "Agreement,"[7] and that Raymond Grant and Richard Roberts would act as operating managers to perform ministerial duties and supervise the mining activities. The operating managers were not empowered to make major decisions outside the ordinary course of business without consultation with the co-owners and after receiving no objection from co-owners having a majority of the working interests in the property. The operating managers were empowered to retain consultants, advisers, and other professionals in order to assist them in performance of their duties.

Respondent disallowed the deductions relating to LCP taken by petitioners on their 1977 Federal income tax return. In support of his position respondent alleges, inter alia, that:

(1) The advanced royalties were paid as a part of a scheme to avoid taxes.

(2) The adviser's fees, management fees, accounting fees, and miscellaneous expenses deducted on petitioners' return are not ordinary and necessary expenses incurred in a trade or business but are instead nondeductible, capital expenditures made as part of a scheme to avoid taxes.

(3) The petitioners are not entitled to a theft or casualty loss on the amount claimed as a deduction on their return as petitioners did not have a profit objective when they invested in LCP.

Petitioners assert that respondent's position is incorrect and that such deductions should be allowed.

In order to prepare for the trial of this case, respondent served a document request and interrogatory request on petitioners. Petitioners failed to comply with these discovery requests and on April 20, 1983, respondent filed a motion to compel production of documents and a motion to compel responses to interrogatories. Petitioners resisted both motions in objections filed on May 9, 1983. Petitioners did not otherwise respond to the document request or interrogatory request

---

[7]"Agreement" is an undefined term in the amended petition. We assume, for purposes of this opinion, that "Agreement" refers to the joint operating agreement.

as required under Rules 72(b) and 71(c), respectively.[8] A hearing on the motions was held at Washington, D.C., on June 15, 1983.

Counsel for respondent made an appearance at the hearing. No appearance was made by petitioners or their counsel. After a consideration of the entire record, including petitioners' objections to respondent's motions filed on May 9, 1983, the Court issued an order dated June 30, 1983, which directed petitioners to produce the documents requested and respond to the interrogatories propounded by respondent on or before September 16, 1983.

Petitioners, by and through their motion now under consideration, seek a reconsideration of our June 30, 1983, order, and, in support thereof, advance the following arguments:

(1) Some of the document requests and interrogatories do not meet the requirements of Rule 70, as they request information relating to the co-owners' investment motives which are irrelevant to a determination of the motives of the partnership;

(2) Some of the document requests and interrogatories are barred under the provisions of Rule 75, relating to depositions of a nonparty for discovery purposes;

(3) Petitioners have been prejudiced by exercising their right under Rule 50(c) to submit objections to respondent's motion in lieu of an appearance at the hearing;

(4) Petitioners do not have some of the documents requested in their possession, custody, or control and lack sufficient information to answer some of the interrogatories;

(5) Some of the documents requested and information sought by the interrogatories are in the possession of respondent; and

(6) Some of the document requests and interrogatories do not meet the requirements of Rule 70 as they are overly broad.

Respondent, in his reply to petitioners' motion, challenges these contentions.

Rule 70 contemplates that the parties will engage in informal consultation or communication within the spirit of the Rule before seeking to utilize formal discovery procedures. *International Air Conditioning Corp. v. Commissioner*, 67 T.C. 89 (1976); *Branerton Corp. v. Commissioner*, 61 T.C. 691 (1974).

---

[8]Petitioners neither supplied the materials requested nor objections as required under Rules 71(c) and 72(b).

In those instances where a party does utilize the formal discovery procedures, the party resisting discovery may submit to the other party objections to such discovery in lieu of production or answers.

The party seeking discovery may move for an order with respect to the objections raised, and the party so objecting to discovery must establish that his objections should be sustained. *Branerton Corp. v. Commissioner*, 64 T.C. 191, 192–193 (1975) (hereinafter referred to as *Branerton II*). Mere conclusory statements alone are not sufficient to support an objection. *P.T. & L. Construction Co. v. Commissioner*, 63 T.C. 404, 408 (1974).

Here, the record before the Court indicates that petitioners have unjustifiably failed at every juncture to comply with the spirit and the letter of our discovery Rules. Petitioners made no attempt to submit objections to discovery in lieu of production or answers. Although petitioners apparently discussed submitting a motion to extend the period of time in which to comply with respondent's discovery requests, this motion was never filed with the Court. Only when respondent submitted his motions to compel did petitioners enumerate their objections to discovery. We believe petitioners' efforts to comply with our Rules were wholly inadequate and reiterate our finding in our June 30 order that:

the Court is satisfied that petitioners have not properly responded to respondent's document request in accord with the rules of practice and procedure of this Court and the mandate of its opinions. The fact that some documents may have been presented at the audit or appellate level is of no moment. Our rules of practice mean exactly what they say and we intend that they be complied with. *Odend'hal v. Commissioner*, 75 T.C. 400, 404 (1980); *Branerton Corp. v. Commissioner*, 61 T.C. 691, 692 (1974).

Indeed, petitioners' objections to respondent's document request and interrogatories are, in large part, vague and ambiguous, unsupported by anything but conclusory statements.[9]

In our earlier consideration of petitioners' objections to respondent's document request and interrogatories, we found that petitioners' objections did not support their contention that discovery should not be compelled, and petitioners were

---

[9] Petitioners have purported to answer only 2 of the 62 interrogatories submitted by respondent. Of the 2 answers, only that in par. 40 is a sufficient response.

ordered to comply with respondent's document request and interrogatories. Now petitioners, in seeking relief from the prior order, claim that the Court should consider the impact of two recently decided cases and that the Court failed to give due consideration to petitioners' objections. These contentions were and still are for the most part meritless. We answer them hereinbelow.

## I. Lack of Relevancy

Rule 70(b) limits discovery to information or responses which are relevant to the *subject matter* of the pending litigation and which are not otherwise protected from discovery on the ground of privilege or other limitation. The standard of relevancy in a discovery action is liberal. *Zaentz v. Commissioner*, 73 T.C. 469, 471–472 (1979). The burden of establishing that the documents or responses sought are not relevant or otherwise not discoverable is on the party opposing production. *Rutter v. Commissioner*, 81 T.C. 937 (1983); *Branerton II, supra* at 193; *P.T. & L. Construction Co. v. Commissioner, supra* at 408.

Petitioners maintain that many of the interrogatories and document requests submitted by respondent are not relevant as they seek information relating to the profit objective of the individual co-owners. Petitioners cite three cases which they claim preclude an examination of information in the possession of the individual co-owners. All three cases involved a determination of whether section 183 barred a loss deduction. See *Flowers v. Commissioner*, 80 T.C. 914 (1983); *Hager v. Commissioner*, 76 T.C. 759 (1981); *Bizub v. Commissioner*, T.C. Memo. 1983–280. In each of these cases, the determination as to the applicability of section 183 was made at the partnership, rather than at the partner, level. Petitioners allege that these cases support their contention that the information sought from the co-owners relating to the investment objectives of LCP is irrelevant. We disagree.

The existence of a profit objective of a partnership is determined at the partnership level. *Brannen v. Commissioner*, 78 T.C. 471, 505 (1982), on appeal (11th Cir., Aug. 23, 1982). However, a partnership is merely a formal entity, and a determination of profit objective can be made with reference to the actions of those individuals who manage the partner-

ship affairs. *Fox v. Commissioner*, 80 T.C. 972, 1007–1008 (1983). This method produces a collective intent of the partnership. Normally, those individuals would be the active partners in the partnership; but in *Fox* there were no active partners, and we instead *focused* on a third party which, in effect, managed the partnership.[10]

Our opinion in *Fox* did not preclude an examination of the actions, knowledge, or intent of other parties which may establish the requisite, collective intent of the partnership. Moreover, the three cases cited by petitioners do, in fact, contain references to the actions, knowledge, and intent of parties other than those who managed the partnership affairs, where the actions, knowledge, and intent of such parties are related to the profit objective of the partnership.[11] However, a party's individual, investment objectives are not relevant in establishing a profit objective of a partnership. See *Brannen v. Commissioner, supra* at 505–506.

Here, the actions, knowledge, and intent of the co-owners will be highly relevant to a determination of the existence of a profit objective at the partnership level. The co-owners individually entered into most of the operational agreements of the partnership and had control, through their ability to veto actions, of all major management decisions.[12] As the parties in control of LCP, their actions, knowledge, and intent are critical to a determination of the collective intent of the partnership.[13]

---

[10]We observe that the joint operating agreement executed by the co-owners of LCP provided that day-to-day operations would be conducted by two operating managers. As in *Fox v. Commissioner*, 80 T.C. 972 (1983), we believe that a determination of the profit objective of LCP involves a consideration of the actions of the operating managers. However, this clearly does not preclude an examination of the actions, knowledge, and intent of the co-owners of LCP who had control of all major management decisions.

[11]For example:

"What occurred after the sale-leaseback was executed also indicates that there was no profit motive. * * * Thirdly, Dr. Hager [a limited partner] admitted that Big Beef did not provide satisfactory care for the cattle; in fact, Dr. Hager indicated that his reason for withdrawing from USSD [the limited partnership] was that USSD was not serious about earning profits. [*Hager v. Commissioner*, 76 T.C. 759, 785–786 (1981).]"

[12]As discussed, *supra* at note 3, we believe that these powers would be sufficient to make the co-owners general partners under State law irrespective of their designation.

[13]We also note that the co-owners executed a sec. 761(a) election. Our cases suggest, but do not decide, that profit objective may be determined at the partner rather than the partnership level where a sec. 761(a) election is made. *Hager v. Commissioner, supra* at 783; *Madison Gas & Electric Co. v. Commissioner*, 72 T.C. 521, 559 (1979), affd. 633 F.2d 512 (7th Cir. 1980). However, we do not decide whether such an exception exists or would apply here.

In addition petitioners, themselves, have put their knowledge and motives at issue through their claim of a theft loss. A theft loss is available where a taxpayer enters into a transaction after having been deceived as to its true nature. *Luman v. Commissioner*, 79 T.C. 846, 860 (1982); *Nichols v. Commissioner*, 43 T.C. 842, 887 (1965). Crucial to an allowance of a theft loss is proof that the transaction as presented to the taxpayer differed in material respects from the transaction actually contemplated. At issue would be whether the taxpayer had knowledge and intent to enter into the transaction as actually contemplated. Therefore, petitioner's knowledge and intent would be relevant in determining if a theft loss is allowable.

## *II. Rule 75*

Rule 75(a) provides, in pertinent part:

(a) When Depositions May be Taken: After a notice of trial has been issued or after a case has been assigned to a Judge or Special Trial Judge of the Court, any party may, without leave of Court, take a deposition for discovery purposes of a *non-party witness* in the circumstances described in paragraph (b) of this Rule. * * * [79 T.C. 1140. Emphasis added.]

Petitioners maintain that Rule 75 applies to some of the document requests and interrogatories directed to them. This is clearly an incorrect interpretation of the Rule which is directed to depositions of nonparty witnesses.[14]

## *III. Rule 50(c)*

Rule 50(c) permits a party to a motion to submit a written statement of his position in lieu of attendance at the hearing on the motion. Petitioners elected to follow this procedure at the original hearing on respondent's Motion to Compel Production of Documents or Impose Sanctions and Motion to Compel Responses to Respondent's Interrogatories or to Impose Sanctions held on June 15, 1983. Petitioners now contend

---

[14]A similar argument was raised and rejected by this Court under Rules 71 and 72. *Zaentz v. Commissioner*, 73 T.C. 469 (1979). In *Zaentz* we said, "He [petitioner] claims * * * that the Commissioner is attempting to discover information from persons who are not parties in violation of the Rules of this Court * * *. The Commissioner is not seeking discovery from persons who are not parties to this case. He does seek information about nonparties, but if that information is relevant, the mere fact that it pertains to nonparties is no reason for a party to refuse to divulge it. [*Zaentz v. Commissioner, supra* at 471–472.]"

that they were unfairly and inequitably treated as a result of availing themselves of the opportunity to submit a writing in lieu of attendance at the hearing. There is not one shred of evidence in this record to support this contention. In fact, the record clearly indicates that petitioners' written objections were given due consideration.

Obviously, attending the hearing and arguing before the trier of fact may provide additional support for a party's position since at the hearing, a party may emphasize or supplement his position enunciated in the writing. It also gives the trier of fact the opportunity to question the party and clarify any points which are unclear. Petitioners opted not to avail themselves of the opportunity to attend the hearing and cannot now be heard to say that they were unfairly prejudiced by not attending the hearing without providing any substantive evidence to support this contention. The mere fact that their objections to the document request and interrogatories were not sustained is not sufficient to show prejudice.

### IV. Lack of Knowledge, Possession, Custody, or Control

A party on whom interrogatories or document requests are served is not required to answer interrogatories of which he has no knowledge or produce documents which he does not have in his possession, custody, or control.

Rule 71, relating to interrogatories, provides in pertinent part:

> (b) Answers: All answers shall be made in good faith and as completely as the answering party's information shall permit. However, the answering party is required to make reasonable inquiry and ascertain readily obtainable information. An answering party may not give lack of information or knowledge as an answer or as a reason for failure to answer, unless he states that he has made reasonable inquiry and that information known or readily obtainable by him is insufficient to enable him to answer the substance of the interrogatory. [60 T.C. 1057, 1100.]

Although the scope of reasonable inquiry is not defined by the Rule, this Court has recognized a duty to inquire of attorneys, accountants, or other agents of the party on whom interrogatories are served and to inquire of other partners in a partnership of which the party on whom the interrogatories are served is a partner. *Zaentz v. Commissioner, supra* at 474. Our

opinion in *Zaentz* does not indicate whether the party on whom the interrogatories are served may satisfy Rule 71(b) by a blanket assertion that reasonable inquiries have been made and that there is no readily ascertainable information available or that reasonable inquiries are impossible. Decisions under rule 36(a) of the Federal Rules of Civil Procedure from which Rule 71(b) was adapted[15] do not clarify this issue. *Adley Express Co. v. Highway Truck Driv. & H., Loc. No. 107*, 349 F. Supp. 436, 451 (E.D. Pa. 1972). However, cases under rule 36(a) of the Federal Rules of Civil Procedure do indicate that the court may examine evidence outside of the answers to determine if, in fact, reasonable inquiry was made. *Asea, Inc. v. Southern Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981).

Rule 72, relating to document requests, provides in pertinent part:

(a) Scope: Any party may, without leave of Court, serve on any other party a request to:
(1) Produce and permit the party making the request, or someone acting on his behalf, to inspect and copy, any designated documents * * * to the extent that any of the foregoing items are in the possession, custody or *control* of the party on whom the request is served * * * [60 T.C. 1057, 1101. Emphasis added.]

and

(b) Procedure: * * * The party upon whom the request is served shall serve a written response within 30 days after service of the request. * * * The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to in whole or in part, in which event the reasons for objection shall be stated. * * * [60 T.C. 1057, 1102.]

Documents subject to discovery under Rule 72 include those within the control of the party on whom the document request is served, and this Court has construed the Rule to require that

---

[15]See our Rules Committee Note to Rule 71(b), 60 T.C. 1057, 1100. We recognize that the language of rule 36(a) of the Federal Rules of Civil Procedure differs from the language of Rule 71(b). Of particular significance is the additional requirement under rule 36(a) of the Federal Rules of Civil Procedure that the answering party:

" shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. * * * "

Although the language in Rule 71(b) and rule 36(a) of the Federal Rules of Civil Procedure is not synonymous, the precedents we rely on comport with our rules.

the party on whom a document request is served make reasonable inquiry of and obtain documents from his attorney, accountant, or other agent and from other partners of a partnership of which the party on whom the document request is served is a partner. *Zaentz v. Commissioner, supra* at 474. Moreover, in *Zaentz* we noted that documents are in the custody of a person when he has the legal right to obtain the documents. *Zaentz v. Commissioner, supra* at 474.

In *Zaentz*, we did not indicate whether the mere assertion that documents requested are not in the possession, custody, or control of the party on whom the request is served is a sufficient response to a document request. However, decisions under rule 34(a) of the Federal Rules of Civil Procedure from which Rule 72(a) was derived[16] indicate that such an assertion would be an adequate response under *ordinary* circumstances. *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D. N.Y. 1978); *La Chemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 172 (D. Del. 1973). These are not ordinary circumstances.

Petitioners contend that they lack knowledge or information to answer many of the interrogatories propounded by respondent and further maintain that they cannot obtain sufficient information to answer such interrogatories. In addition, petitioners assert that they do not have possession, custody, or control of many of the documents requested. We do not find petitioners' contentions credible in light of the co-owners' association with one another and with the other entities involved, and in these circumstances, we will not permit petitioners to rely on their naked assertions that such information cannot be produced.

Although we recognize that petitioners *may* not have actual knowledge of the answers to many of the interrogatories propounded by respondent nor actual possession or custody of many of the documents requested by respondent, our inquiry does not end there. Most of the answers or documents requested pertain to information that would be available from the other co-owners of LCP, from the operating managers of LCP, from FEC which has acted on behalf of petitioners, or as a matter of legal right from LCP, itself.[17] Under our mandate

---

[16]See our Rules Committee Note to Rule 72(a), 60 T.C. 1057, 1102.

[17]With respect to general partnerships, the law of the State of Kentucky provides—

in *Zaentz*, the relationship between petitioners and the persons and entities enumerated above is sufficient to require petitioners to make inquiry to answer the interrogatories or to obtain the requested documents. Petitioners simply have not met that mandate here. Therefore, unless otherwise excepted, petitioners will be required to answer all of respondent's interrogatories and comply with all of respondent's document requests. To the extent that such information or documents are unavailable after inquiry, petitioners should so state with a full explanation of how inquiry was made.

## V. Respondent's Possession of Requested Documents and Information

Our Rules do not bar discovery of matters already within the knowledge of the party requesting discovery, and, in fact, the Court has permitted discovery of documents which have been previously examined by the requesting party. *Oliver v. Commissioner*, T.C. Memo. 1975-128. Petitioners object to producing documents or responding to interrogatories which are already in the possession, or within the knowledge, of respondent. Such objection is meritless. However, with respect to his document request, respondent has conceded that he has the following documents:

"Partnership books.—The partnership books shall be kept, subject to any agreement between the partners, at the principal place of business of the partnership, and every partner shall at all times have access to and may inspect and copy any of them. [Ky. Rev. Stat. sec. 362.240 (1972).]"

and;

"Duty of partners to render information.—Partners shall render on demand true and full information on all things affecting the partnership to any partner or to the legal representative of any deceased partner or partner under legal disability. [Ky. Rev. Stat. sec. 362.245 (1972).]"

and with respect to limited partnerships it provides—

"Rights of a limited partner.—(1) A limited partner shall have the same rights as a general partner to

"(a) Have the partnership books kept at the principal place of business of the partnership, and at all times to inspect and copy any of them,

"(b) Have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable, * * * [Ky. Rev. Stat. sec. 362.500 (1972).]"

This record supports the conclusion that much of the information requested by respondent is available to petitioners as a matter of legal right under the law of the State of Kentucky.

(1) Promissory notes for 32 investors. These documents relate to some of respondent's requests in paragraphs 3 and 4 of the request for production of documents.

(2) Joint operating agreement, sub-lease agreement, mining services agreement (and addendum), and 14 individual memorandums of leases. These documents relate to respondent's requests in paragraphs 11, 18, and 20 of the request for production of documents.

(3) Three reports prepared by Hensley-Schmidt, Inc., and one prepared by E. D. Conaway & Associates. These documents relate to some of respondent's requests in paragraphs 2 and 27 of the request for production of documents.

(4) A private offering memorandum. These documents may relate to some of respondent's requests in paragraph 25 of the request for production of documents.

(5) Two advisory opinions concerning tax aspects of coal operations. These documents relate to some of respondent's requests in paragraph 1 of the request for production of documents.

(6) Nineteen pages of a civil complaint. This document relates to some of respondent's requests in paragraph 10 of the request for production of documents.

(7) Four unaudited financial statements. These documents relate to some of respondent's requests in paragraph 6 of the request for production of documents.

(8) Six checks drawn on the Landmark Coal Program checking account. These documents relate to some of the respondent's requests in paragraph 21 of the request for production of documents.

In these circumstances, we will not require petitioners to produce these documents again.

## VI. Overbreadth

Where a document request or interrogatory is overly broad, an unduly heavy burden is imposed on the party upon whom the discovery requests are served to first determine what information or responses come within the definition of the document request or interrogatory and then sift through such information to determine its relevancy and the application of other possible limitations. Such a document request or interrogatory is normally outside the scope of permissible discovery

in Rule 70(b), and in such situations the Court has been reluctant to grant discovery or, on its own motion, limit the document request or interrogatory. *Branerton II, supra* at 202–203. We believe this approach is appropriate in most instances as the requesting party is usually better able to ascertain the specific information needed to develop his case.

In addition to the general limitation on discovery found in Rule 70(b), Rule 72(b) requires that documents or categories of documents which are the subject of a document request be described with "reasonable particularity." Rule 72(b) is derived from Rule 34(b) of the Federal Rules of Civil Procedure.[18] The reasonable particularity requirement under the Federal Rules of Civil Procedure involves a determination of whether a reasonable man would know what documents and things are called for. 4A J. Moore, Federal Practice, par. 34.07, at 34–36 (2d ed. 1948).

Specific cases applying the reasonable particularity requirement under the Federal Rules of Civil Procedure have permitted the use of description by association and have found the requirement met when the designation is limited both spatially and temporally (*Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348, 353 (S.D. N.Y. 1973)); when the request refers to a specific client, project and lapse of time (*Mitsui & Co. v. Puerto Rico Water Resources*, 79 F.R.D. 72, 82 (D.P.R. 1978)); and when the request designates by well-described categories and specific time periods (*In Re Folding Carton Antitrust Litigation*, 76 F.R.D. 420, 425 (N.D. Ill. 1977)). The determination of whether the reasonable particularity requirement is met depends on the facts and circumstances of each case (*Mallinckrodt Chemical Works v. Goldman, Sachs & Co., supra* at 353); and courts will permit broader descriptions when breadth is needed to insure that all discoverable materials are provided (*Laufman v. Oakley Building & Loan Co.*, 72 F.R.D. 116, 122 (S.D. Ohio 1976)). This Court has adopted a more restrictive approach to the reasonable particularity requirement, rejecting the use of description by association where more specific delineations are available to the requesting party. *Branerton II, supra* at 202.

---

[18]See our Rules Committee Note to Rule 72(b), 60 T.C. 1057, 1102.

In our view, many of the document requests and interrogatories for which discovery is sought are described by association. Although such description is normally not permissible in discovery before this Court under *Branerton II, supra,* the record in this case indicates to the Court's satisfaction that petitioners did not cooperate in assisting respondent to narrow the scope of available information. Respondent was not able to further delineate the information he seeks, as he was in *Branerton II, supra.* Therefore for purposes of this case, we will permit description by association to the extent that we believe more particularized descriptions were not available to respondent. The discovery requests for which we will direct a response from petitioners are limited as to both time and space.[19] But the Court will not excise language from the other discovery requests to bring them within the parameters of its Rules.

Upon an exhaustive reconsideration of this record in its entirety,[20] we have concluded that many of respondent's document requests are overbroad and some of his interrogatory requests suffer from the same infirmity. In such posture, we must and do grant petitioners' motion insofar as it seeks

---

[19]We will not require petitioners to comply with the document requests described in pars. 11, 18, and 20, although these requests are not overly broad, as respondent concedes that he has all of these documents in his possession.

[20]Petitioners raised other objections for purposes of the June 15, 1983, hearing. Those objections were:

(1) The work product doctrine precludes discovery of some of the information requested;

(2) Some of the discovery requests are precluded as they seek conclusions of law;

(3) The phrase "real property mineral rights" is not sufficiently defined;

(4) Some of the discovery requests seek information which is not relevant on grounds other than those presented for purposes of the pending motion.

Since these objections have not been raised for purposes of petitioners' pending motion, we deem them abandoned.

Petitioners have reiterated their objection to respondent's use of the word "beneficiation" in interrogatory par. 49 as being a term with which petitioners are unfamiliar. Respondent has adequately defined the term in his reply: "The word is a technical mining term and should be familiar to one acquainted with the coal industry. Generally, the term refers to the upgrading of the coal product through washing or some other purification process."

reconsideration of our June 30, 1983, order.[21] To reflect the foregoing,

*An appropriate order will be issued.*

---

[21]As we observed in *Amos v. Commissioner*, 43 T.C. 50, 56 (1964), affd. 360 F.2d 358 (4th Cir. 1965);

"Petitioner, however, contends that such a decision is out of joint with the views which were previously expressed by us in the cases of *Eugene Vassallo*, 23 T.C. 656 (1955), and *Meyer J. Safra*, 30 T.C. 1026 (1958). In answer to this contention it is particularly appropriate to note that what was said by the Supreme Court in *Helvering v. Hallock*, 309 U.S. 106 (1940), applies with equal force to the Tax Court: 'This Court, unlike the House of Lords, has from the beginning rejected a doctrine of disability at self-correction.' Thus, a careful consideration of both these cases convinces us that while *Vassallo* may correctly have been disposed of on the basis of the inapplicability of res judicata, our refusal in *Safra* to apply the doctrine of collateral estoppel was erroneous. * * * "

This doctrine has been cited with approval in the concurring opinion by Judge Tannenwald; *Sylvan v. Commissioner*, 65 T.C. 548, 556 (1975).