JOHN H. O'NEILL and MARILYN S. O'NEILL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
O'Neill v. Commissioner
Docket Nos. 18045-80, 29097-82.
United States Tax Court
T.C. Memo 1985-92; 1985 Tax Ct. Memo LEXIS 539; 49 T.C.M. (CCH) 850; T.C.M. (RIA) 85092; February 28, 1985. Edward B. Simpson, for the petitioners. Edward I. Kaplan, for the respondent. PETERSON
MEMORANDUM FINDINGS OF FACT AND OPINION PETERSON, Special Trial Judge: These consolidated cases were assigned to Special Trial Judge Marvin F. Peterson pursuant to the provisions of section 7456(c) and (d), and General Order No. 8, 81 T.C. XXIII (1983). Respondent determined deficiencies in petitioners' Federal income taxes as follows: Taxable Year
Deficiency
1976
$3,081.89
1977
3,874.35
1978
3,962.00
1979
3,082.00
After concessions, the issues remaining for decision are (1) whether expenses claimed by petitioners for each of the years at issue with regard to certain real estate matters were attributable to activities not engaged in for profit within the meaning of section 183; [1] (2) whether petitioners' *541 rental activity during the years 1976 and 1977 was an activity not engaged in for profit within the meaning of section 183; and (3) whether petitioners' distributive share of the losses of the Tennis Associates partnership are deductible for the years at issue. [2]
Petitioners are husband and wife and filed joint Federal income tax returns for the years in question. They resided in San Francisco, California at the time of filing the petitions herein. Petitioners were *542 married in 1940 and have four adult children, Erin, Patrice, Maris and John III. In the 1940's and 1950's Mrs. O'Neill worked as an executive secretary and administrative assistant for companies involved in oil land and lease operations. Mr. O'Neill worked in the welding business. In 1975, petitioners' assets consisted of their residence, 18 percent of the stock in Mr. O'Neill's employer, Dunn Welding, a closely held corporation, and an interest in that corporation's profit sharing plan. Subsequently, petitioners sold their residence, netting $60,000 cash. They also sold the Dunn Welding stock for $25,000. 1. Real Estate Expenses - section 183. In late 1975, Mrs. O'Neill began investigating real estate in which to invest the proceeds of the sale of petitioners' residence and Mr. O'Neill's stock. In 1976, petitioners purchased residential property in Houston, Texas (Houston property) and a two-thirds interest in another residential property in Encino, California (Encino property). The remaining one-third interest in the Encino property was purchased by Mrs. O'Neill in 1977. Mrs. O'Neill incurred and deducted the following for various expenses, including automobile expenses *543 and depreciation, in searching for real estate: Year
Expenses
1976
$4,834
1977
6,634
1978
5,162
1979
4,682
Petitioners did not sell any property and no income was derived from Mrs. O'Neill's real estate activities. Respondent disallowed the deduction claimed by petitioners as investment expenses on the ground that Mrs. O'Neill's real estate activity was not an activity engaged in for profit under section 183. Section 183(a) provides that if an activity is not engaged in for profit no deduction attributable to such activity shall be allowed under this chapter except as otherwise provided under section 183(b). Section 183(c) defines an activity not engaged in for profit as "* * * any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212." In determining whether an activity is one engaged in for profit, petitioners must show that they engaged in the activity with an actual and honest objective of making a profit. Surloff v. Commissioner,81 T.C. 210, 233 (1983); Dreicer v. Commissioner,78 T.C. 642, 644-645 (1982), affd. *544 without opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer's expectation need not be a reasonable one, but there must be a good faith objective of making a profit. Section 1.183-2(a), Income Tax Regs.Dreicer v. Commissioner,supra.The determination of whether the requisite profit objective exists is to be resolved on the basis of all the surrounding facts and circumstances of the case. Section 1.183-2(b), Income Tax Regs.; Golanty v. Commissioner,72 T.C. 411 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). In determining whether an activity is engaged in for profit, greater weight is to be given to the objective facts than to the taxpayer's mere statement of his intent. Section 1.183-2(a), Income Tax Regs.; Dreicer v. Commissioner,supra at 645. Petitioners have the burden to show that they had the requisite objective and that respondent's determination that the activities were not engaged in for profit is incorrect. Welch v. Helvering, 290 U.S. (1933) Rule 142(a), Tax Court Rules of Practice and Procedure.
Section 1.183-2(b), Income Tax Regs., provides a list of *545 nine factors to be used in determining whether an activity is engaged in for profit. These factors include (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) any elements indicating personal pleasure or recreation. No one factor is conclusive in making the determination. Allen v. Commissioner,72 T.C. 28, 34 (1979). Based on this record, we conclude that Mrs. O'Neill's real estate activities were not engaged in for profit within the meaning of sectin 183(c). Although, during the four years under consideration Mrs. O'Neill investigated numerous pieces of real estate, petitioners only purchased two pieces of property. Both were purchased during the first year of her search *546 for real estate. During the remaining three years, Mrs. O'Neill contends that she continued to investigate potential investments, but was unable to find suitable properties. Although Mrs. O'Neill maintains that she investigated investment opportunities in real estate for the sole purpose of buying and selling property at a profit, the objective facts indicate that her primary motive was to purchase real estate for personal use. Mrs. O'Neill did not conduct her activities in a businesslike manner. The Houston property was purchased despite the fact that Mrs. O'Neill was aware that certain restrictions might exist regarding the use of the property for investment purposes. Such action is inconsistent with her avowed purpose to subdivide the land she purchased for resale to developers for the construction of townhouses. Likewise, the Encino property was not purchased in a businesslike fashion. The property originally came to Mrs. O'Neill's attention through her daughter, Maris. Maris had agreed to purchase a two-third interest in the house. A friend, Spencer Rynear, purchased the remaining one-third interest. The financing had been approved on this basis when Maris concluded *547 that she would not be able to supply the downpayment required to purchase the property. In April 1976 she asked her mother to purchase the interest which she had agreed to purchase with the understanding that Maris would rent the two-third interest from Mrs. O'Neill. Since the property was located in Encino, and Mrs. O'Neill lived in Houston, she was required to travel a great distance to take care of the property. Generally, residential property is not purchased for investment purposes where the property is located in a distant city if there are additional costs involved in its management. Rather, it is more likely that such a purchase is made for personal reasons, such as providing a home for a child. Although Mrs. O'Neill devoted a great deal of time to investigating various parcels of real estate, she did not actually purchase any real estate for investment purposes. Furthermore, Mrs. O'Neill's real estate experience was not in the area of residential real estate which was the focus of her activities. Petitioners not only failed to make a profit from Mrs. O'Neill's activities, they also failed to generate any income whatsoever. Based on these facts we conclude that Mrs. *548 O'Neill did not have an actual and honest objective of making a profit, but rather was motivated by her desire to find suitable housing for her family. Mrs. O'Neill contends that she was primarily interested in selling the real estate she purchased at a profit. However, such an interest is insufficient to establish a profit motive where the overriding purpose for purchasing the real estate is personal. See Mel Dar Corporation v. Commissioner,309 F.2d 525 (9th Cir. 1962), affg. a memorandum opinion of this Court. See also Nicath Realty Co., Inc. v. Commissioner,T.C. Memo. 1966-246. 2. Rental Activity - section 183. Following the purchase of the two-thirds interest in the Encino property, Mrs. O'Neill agreed to rent her interest in the property to her daughter Maris beginning June 1, 1976, for $496 per month. The amount of the rent was sufficient to cover Mrs. O'Neill's mortgage payment and insurance and taxes on the property. The house was to be occupied by her daughters Maris and Patrice, a granddaughter, and Spencer Rynear. Later, in 1977, Mrs. O'Neill purchased Mr. Rynear's one-third interest and increased the rent proportionately. *549 In 1976 Maris only made four rental payments totaling $1,980 of which only $744 was reported by petitioners. In 1977, petitioners received and reported rental income of $1,658. During 1976 and 1977 Maris was unemployed and was unable to make full rental payments. In subsequent years the rent was paid in full. Respondent disallowed the duduction petitioners claimed for the losses resulting from the rental of the Encino property for 1976 and 1977 on the ground that the rental activity was not an activity engaged in for profit within the meaning of section 183. No adjustment was made with regard to the rental property for the years after 1978 and 1979. Based on this record, we conclude that petitioners' rental of the Encino property was not an activity engaged in for profit within the meaning of section 183. The rental operation was not operated in a businesslike manner. This is evidenced by the fact that Mrs. O'Neill took no positive action when Maris failed to pay the agreed rent for nearly one year. Although a landlord might allow a tenant to defer rental payments when the tenant is unemployed as Maris was, the landlord would ultimately make some effort to collect the *550 unpaid rent. At the time of trial, nearly seven years after Maris agreed to rent the house, the delinquent payments remain unpaid. Furthermore, there was no written lease between Mrs. O'Neill and Maris. While these facts might not be conclusive in an arm's-length transaction, the facts must be scrutinized more closely when the parties are related. Cooper Agency v. Commissioner,33 T.C. 709, 717 (1960), affd. per curiam sub nom. Estate of Cooper v. Commissioner,291 F.2d 831 (4th Cir. 1961). Furthermore, not only was Mrs. O'Neill an inexperienced landlord, she spent very little time managing the Encino property which is best explained by the fact that she had three adult daughters and a granddaughter living in the area. We see no merit in petitioners' argument that respondent is taking inconsistent positions with respect to the years 1976 and 1977 as opposed to 1978 and 1979. During 1978 and 1979 Maris was employed and able to make her rental payments. Although we have concluded that the house in Encino was purchased for the primary purpose of providing a place for Maris to live, such a finding is not inconsistent with Mrs. O'Neill's intent *551 to rent the house to Maris on an arm's-length basis when she obtained employment and was capable of supporting herself. Thus, we conclude that the rental activity was not conducted with an honest objective of making a profit. Hence, the rental loss is not deductible. 3. Tennis Associates Partnership. On January 1, 1976, petitioners and their son John III formed the Tennis Associates partnership. Under the terms of the partnership agreement, petitioners were to provide clothing, automobile and travel expenses, coaching fees, playing equipment and other funds deemed essential by the parties for John III to participate in professional tennis tournaments or a period of up to five years. In return, petitioners were to receive a share of John III's earnings equal to the funds advanced plus 25 percent of the excess. Petitioners were entitled to cancel the agreement upon 30 days' notice. As a result of John III's tennis activities, petitioners claimed deductions for their distributive share of the losses incurred by Tennis Associates. The claimed deductions and the disallowance by respondent are as follows: Deduction
Deduction
Year
Claimed
Disallowed [3]
1976
$6,209.64
$6,127.90
1977
11,382.03
9,778.88
1978
11,251.75
11,251.75
1979
9,123.00
9,123.00
*552 The disallowance of the above deductions claimed with regard to the partnership losses was based on the ground that the partnership was an activity not engaged in for profit under section 183. Applying the factors set forth above, we agree with respondent's determination. In determining whether a partnership is engaged in an activity for profit, profit motive is to be tested at the partnership level. Rosenfeld v. Commissioner,82 T.C. 105, 112 (1984). Brannen v. Commissioner,78 T.C. 471, 505 (1982), affd. 722 F.2d 695 (11th Cir. 1984). To determine partnership intent, the actions of the managing partners with regard to the partnership activities are relevant. Rosenfeld v. Commissioner,supra at 113; Fox v. Commissioner,80 T.C. 972, 1007-1008 (1983), affd. by order (2d Cir. Jan. 23, 1984), affd. sub nom. Barnard v. Commissioner,731 F.2d 230 (4th Cir. 1974), *553 affd. without published opinions sub nom. Hook v. Commissioner,Krasta v. Commissioner,Leffel v. Commissioner,Rosenblatt v. Commissioner,Zemel v. Commissioner,734 F.2d 5-7, 9 (3d Cir. 1984). In the instant case the partnership was not carried on in a businesslike manner. The parties did not execute a formal partnership agreement, but relied on an informal understanding to enter into a contract if John was successful on the tour. Mrs. O'Neill did not investigate the normal business arrangements between tennis players and their sponsors regarding the sharing of profits and losses or other aspects of such a partnership agreement. She did not compare the profit potential associated with her son's involvement with that of other players. In fact, she admitted that this speculative venture was not the kind she would invest in if not for the fact that her son was involved. Furthermore, she did not follow her son's career closely with regard to the tournaments in which he played and the matches that he won. Mrs. O'Neill's projections as to her son's earnings was not developed on the basis of a detailed examination of the economic aspects of professional *554 tennis or by comparing other similarly situated players, but rather was based primarily on information from tennis magazines and from what John III had told her. Moreover, Mrs. O'Neill's estimation of her son's ability to earn money on the tour was premised on her belief that his tennis skills would improve to the point where he could qualify to play in tournaments that had large purses. In essence, it is obvious that the anticipated income to the partnership was nothing more than a guess. Although petitioners were entitled to cancel the agreement on 30 days' notice, they did not do so despite John III's failure to win any prize money or earn any points which would enable him to play in more lucrative tournaments during the first three years of the agreement.In fact, after he was injured, they continued the agreement for one more year during which he was physically unable to compete. Mrs. O'Neill knew very little about professional tennis other than what her son and his friends told her. She did not consult with experts on her own to seek advice. She spent every little time following her son's career and managing him with regard to competition. She merely controlled the purse *555 strings. Based on these facts, we can only conclude that Mrs. O'Neill did not enter into the partnership with an honest objective of making a profit. Rather they are wholly consistent with a mother's desire to support her son and help him get started in his chosen career. Thus, petitioners' distributive share of the losses generated by Tennis Associates are not deductible. Decision will be entered under Rule 155 in docket No. 18045-80.
Decision will be entered for the respondent in docket No. 29097-82.
Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Respondent also raises an alternative argument relating to a deduction claimed for the use of two automobiles during the years at issue. Respondent contends that in the event the Court determines that petitioners' real estate activity and the tennis partnership were activities engaged in for profit, the depreciation deduction is nonetheless not allowable since the use of the automobiles was not an ordinary and necessary business expense pursuant to section 162. Since we have found that both the real estate and the partnership were activities not engaged in for profit, we need not consider this issue.↩
3. Respondent allowed a deduction for interest expense in the amount of $81.74 for the year 1976 and deductions for interest expense in the amount of $895.35 and sales tax in the amount of $707.80 and excluded from income $1,694 for recapture of depreciation for the year 1977.↩